UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ZINO, Jr., et al., | ) | 5:11CV1676 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE BENITA PEARSON |
| | ) | (Mag. Judge Kenneth S. McHargh) |
| WHIRLPOOL CORP., | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| Defendants | ) | MEMORANDUM |
| | ) | <u>AND ORDER</u> |

McHargh, Mag. Judge

Plaintiff Joseph Zino, Jr., and similarly situated persons (collectively, "Zino"), have filed suit against defendants Whirlpool Corporation and Whirlpool Corporation Group Benefit Plan for Retirees (collectively, "Whirlpool" or "the defendants") alleging (to simplify) unauthorized changes to retirement benefits provided through collective bargaining agreements. (Doc. 62, Second Amended Complaint.)

Currently before the court is the Motion of Interested Party to Quash Subpoena. (Doc. 94, as amended by doc. 97.) The motion was filed by non-party attorney William B. Gore ("Gore"), who has received a subpoena commanding him to testify, and to bring documents to the deposition. (Doc. 97, Appendix 1.) Gore contends that the subpoena would require him to testify "about legal advice and communications given to and exchanged in confidence with Local 1985," a former

client of Gore's, and that IBEW Local 1985 has neither waived the attorney-client privilege nor has it authorized Gore to do so. (Doc. 97, at 4.) Gore also contends that he is subject to ethical constraints under the Ohio Rules of Professional Conduct, which bar the testimony sought under the subpoena. (Doc. 97, at 4-6.)

The court has considered the arguments put forward in support of the Motion (doc. 97), the defendants' memorandum in opposition (doc. 102), and Gore's response (doc. 104), as well as the arguments made orally by the parties, and counsel for Gore, at the telephone conference of Oct. 18, 2012. The court DENIES the motion to quash the subpoena, for the following reasons.

## I. MOTION TO QUASH

Matters relating to subpoenas are governed by Rule 45. Fed. R. Civ. P. 45. A subpoena may command the person to whom it is directed to give testimony. Fed. R. Civ. P. 45(a)(1). The subpoena duces tecum commands the person to whom it is directed "to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person." Id. Under certain circumstances outlined in Rule 45, the court by which a subpoena is issued may quash or modify the subpoena. Fed. R. Civ. P. 45(c)(3). One of the provisions allowing the court to quash or modify a subpoena is where the response would require "disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed, unless the party seeking to challenge the subpoena holds a personal right or privilege with respect to the subject matter requested.  Smith v. Midland Brake, Inc., 162 F.R.D. 683, 685 (D. Kan. 1995).  Here, the subpoena was directed to Gore, a non-party, who was entitled to file the motion to quash.

A motion which serves to thwart a deposition is ordinarily denied.  Leighr v. Beverly Enterprises-Kansas Inc., 164 F.R.D. 550, 552 (D. Kan. 1996) (denying motion for protective order).  See also 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2037.  A motion which would prevent the taking of a deposition is "an extraordinary measure."  Prozina Shipping Co. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998).  The court in Prozina stated that the moving party, opposing the deposition, has "a heavy burden of showing extraordinary circumstances" to justify granting such a motion.  Id.  See also Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) ("absent extraordinary circumstances," prohibiting taking of deposition would be error); Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) ("heavy burden").

The court denies the motion to quash, finding the preferable course is to allow the deposition to take place, with the normal provisions regarding questions concerning privileged matters.  See, e.g., NLRB v. Modern Drop Forge Co., 108 F.3d 1379, 1997 WL 120572, at *2-*3 (7th Cir. Mar. 14, 1997) ((TABLE, text in

3

WESTLAW) (citing cases); Jamison v. Miracle Mile Rambler, Inc., 536 F.2d 560, 565-566 (3d Cir. 1976); McKenna v. Nestle Purina PetCare Co., No. 2:05CV0976, 2006 WL 2612980, at *2 (S.D. Ohio Sept. 11, 2006) (deposition ordinarily convened, with opportunity to object to improper questions).

## II.  ATTORNEY-CLIENT PRIVILEGE

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R.Civ. P. 26(b)(1).  Privileged matters are protected from discovery.  Fed. R. Civ. P. 26(b)(1) and (5).  The attorney-client privilege serves to shield confidential communications between a lawyer and client from disclosure either through discovery or at trial.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

The attorney-client privilege encourages " 'full and frank communication between attorneys and their clients and thereby promotes broader public interests in the observance of law and the administration of justice.' " In re Lott, 424 F.3d 446, 450 (6th Cir. 2005), cert. denied, 547 U.S. 1092 (2006) (quoting Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)).  The Sixth Circuit has recognized that "the attorney-client privilege is a necessary foundation for the adversarial system of justice." Lott, 424 F.3d at 450.

However, the privilege can be expressly or implicitly waived by the client. Clevenger v. Dillard's Dept. Stores, Inc., No. 1:02CV558, 2007 WL 127978, at *4

4

(S.D. Ohio Jan. 11, 2007). "By voluntarily disclosing her attorney's advice to a third party, for example, a client is held to have waived the privilege because the disclosure runs counter to the notion of confidentiality." In re Grand Jury Proceedings of Oct. 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996) (citing Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1424 (3rd Cir. 1991)). See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002), cert. dismissed, 539 U.S. 977 (2003) (privilege waived by voluntary disclosure to third parties); Cooper v. United States, 5 F.2d 824, 825 (6th Cir. 1925) (per curiam).

Implied waivers of privilege are construed narrowly. Lott, 424 F.3d at 453; Clevenger, 2007 WL 127978, at *4. Courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." Lott, 424 F.3d at 453 (quoting Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003)); Clevenger, 2007 WL 127978, at *4.

### III. WAIVER OF ATTORNEY-CLIENT PRIVILEGE

Defendants argue, in their memorandum in opposition, that Local 1985 waived the attorney-client privilege through production of five exhibits in discovery. See generally doc. 102. After extensive discussion during the Oct. 18 telephone conference, as well as consideration of the written arguments put forward in the memoranda pro and con the motion, the court finds the arguments of defendants

concerning the five exhibits well-taken. The court find that Local 1985 waived the attorney-client privilege as to Exhibits D, E, F, H and O. See doc. 102, DX D, E, F, H and O.

Defendants contend that any voluntary disclosure by an individual to a third-party waives the privilege not only as to the specific communication disclosed, but to all other communications relating to the same subject matter. (Doc. 102, at 8, quoting In re Grand Jury Proceedings, 78 F.3d at 255.)

The quotation from the Grand Jury Proceedings case does not comprise the court's opinion, but rather it is a quotation from a case relied upon by a party. See In re Grand Jury Proceedings, 78 F.3d at 255 (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam).) The Sixth Circuit pointed out that the cases cited by the party "do not truly answer the question of the proper scope of the waiver, for they only inform us that waiver applies to the rest of the communications on the same subject matter. But subject matter can be defined narrowly or broadly." Id.

The Grand Jury Proceedings court noted that it did not have the complete document at issue before it, but stated:

> But we do not believe that the owner and president's waiver of the privilege by divulging the attorney's advice on several specific items of the marketing plan necessarily constitutes waiver as to the attorney's advice on the entire plan. We are thus persuaded by the line of cases that try to make prudential distinctions between what was revealed and what remains privileged.

Id. at 255-256 (citing cases). The court of appeals reversed the district court, ruling as follows:

> Accordingly, we reverse the District Court's order to the extent it allows the government to ask the attorney unlimited questions about her advice on the entire marketing plan. Instead, the government may ask questions that clearly pertain to the subject matter of the specific points on which a waiver did occur. The District Court will have to decide whether the remaining points in the marketing plan are truly the same subject matter ....

Id. at 256.

The other case cited by the defendants has a rather different factual circumstance. In United States v. Jones, the case quoted earlier, the appellate court affirmed denial of a motion to quash where the privilege was waived because a tax firm's clients had published substantial portions of the contested tax advice documents. The court ruled:

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. In re Sealed Case, 676 F.2d 793, 808-09 (D.C.Cir.1982). In Sealed, the court stated that when a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter. Selective disclosure for tactical purposes waives the privilege. Id. at 818.

Jones, 696 F.2d at 1072. The circumstances of Jones do not support a blanket waiver here.

The court notes that the subpoena here seeks a rather broad range of information which would ordinarily be protected by the attorney-client privilege or the work-product doctrine. As one example, the subpoena requests:

> 4. Any and all legal research and memoranda, documents and/or correspondence summarizing legal research regarding responses made to inquiries made by Local 1985 regarding the ability of the Company or the parties (Hoover and Local 1985) to make changes to Hoover Retirees health and welfare benefits.

(Doc. 97, Appx. 1, Exh. A ("Rider"), at 3, § B.4.) Such a wide-ranging request goes well beyond the limited waiver(s) which the court finds to have taken place concerning Exhibits D, E, F, H and O. In addition, the court is cognizant that implied waivers are to be construed narrowly. Lott, 424 F.3d at 453; Clevenger, 2007 WL 127978, at *4.

The guidance of the Sixth Circuit in the Grand Jury Proceedings case should apply here: proper questions concerning privileged areas would be limited to "questions that clearly pertain to the subject matter of the specific points on which a waiver did occur." In re Grand Jury Proceedings, 78 F.3d at 256.

## IV. OHIO RULES OF PROFESSIONAL CONDUCT

The Local Rules of this court provide that: "Attorneys admitted to practice in this Court shall be bound by the ethical standards of the Ohio Rules of Professional Conduct adopted by the Supreme Court of Ohio, so far as they are not inconsistent with federal law." Local Rule 83.7.

Gore asserts that Prof. Rule 1.6 precludes him from disclosing any information relating to his representation of Local 1985. (Doc. 97, at 3.) Rule 1.6 states that:

> A lawyer shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by division (b) or required by division (c) of this rule.

Ohio Prof. Rule 1.6(a). It is not contested that Gore's ethical duties to his former clients continue to apply, as set forth in Rule 1.9(c).

However, as noted by defendants, Rule 1.6 permits an attorney to

> . . . reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the attorney reasonably believes necessary for any of the following purposes: . . . (6) to comply with other law or a court order.

Ohio Prof. Rule 1.6(b). In addition, Official Comment [3] expands on the interrelationship between confidentiality as required by the ethical rules and attorney-client privilege:

> The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work-product doctrine, and the rule of confidentiality established in professional ethics. The attorney-client privilege and the work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-attorney confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.

9

Official Comment [3] to Ohio Prof. Rule 1.6 (emphasis added). In other words, the rule of client-attorney confidentiality as set forth in Rule 1.6 does not apply to restrict testimony in judicial proceedings in which a lawyer is a witness, or is required to produce evidence concerning a client. The attorney-client privilege and the work-product doctrine may apply, as recognized by the rule.

Here, Gore is commanded through subpoena to testify at deposition. It is the ruling of this court that Gore shall testify to relevant matters not otherwise protected by attorney-client privilege or the work-product doctrine, to the extent that such protection has not been waived, as discussed above. Such testimony will not run afoul of his ethical obligations under the Ohio Rules of Professional Conduct. Official Comment [3] to Ohio Prof. Rule 1.6.

## V. SUMMARY

The Motion of Interested Party to Quash Subpoena (doc. 94, 97) is DENIED.

The court finds that the rule of client-attorney confidentiality as set forth in Rule 1.6 of the Ohio Rules of Professional Conduct does not apply to restrict testimony in judicial proceedings such as this. Official Comment [3] to Ohio Prof. Rule 1.6. Of course, the attorney-client privilege and the work-product doctrine may apply.

The court finds that Local 1985 has waived the attorney-client privilege as to Exhibits D, E, F, H and O. See doc. 102, DX D, E, F, H and O. However, the

attorney-client privilege has not been entirely waived as to other areas of Gore's former representation of Local 1985; thus, proper questions at deposition grounded on the basis of waiver should be limited to "questions that clearly pertain to the subject matter of the specific points on which a waiver did occur." In re Grand Jury Proceedings, 78 F.3d at 256.

    IT IS SO ORDERED.

Dated:   Oct. 19, 2012                    /s/ Kenneth S. McHargh
                                                   Kenneth S. McHargh
                                                   United States Magistrate Judge