PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ZINO, JR., *et al.*, | ) | |
| | ) | CASE NO. 5:11CV01676 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WHIRLPOOL CORPORATION, *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION &** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 332] |

Pending before the Court is Defendants' Motion for Reconsideration.  ECF No. 332. Defendants ask the Court to reconsider its orders issued resolving the cross-motions for summary judgment (ECF No. 191) and later held bench trial[1] (ECF No. 310), in response to a subsequently issued Supreme Court decision, *Polymers USA, LLC v. Tackett*, 524 U.S. ___, 135 S. Ct. 926, 190 L. Ed. 2d 809 (2015).  The motion for reconsideration is opposed by Plaintiffs and fully briefed.  *See e.g.,* ECF No. 339, ECF No. 340.  Additionally, both sides have filed notices of supplemental authority and responsive briefs.  *See* e.g., ECF No. 347, ECF No. 349, ECF No. 350, and ECF No. 352.  The Court is fully informed having reviewed the record and that submitted by the parties.

For the reasons below, Defendants' motion is granted, in part, and denied, in part.

**I.**

---

[1] The Court segmented the trial.  Only Phase One has been completed.

(5:11CV01676)

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. The Sixth Circuit, however, has held that a motion to reconsider may be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *See* Rodriguez v. City of Cleveland, No. 1:08-CV-1892, 2009 WL 1565956, at * 1 (N.D. Ohio June 6, 2009) (citing Smith v. Hudson, 600 F.2d 60, 62 (6th Cir.1979)). Nonetheless, such motions are disfavored and seldom granted because they contradict notions of finality and repose. *Id.*; *see also* Wells Fargo Bank v. Daniels, No. 1:05-CV-2573, 2007 WL 3104760, at * 1 (N.D. Ohio Oct. 22, 2007); Plaskon Elec. Materials, Inc. v. Allied-Sigal, Inc., 904 F. Supp. 644, 669 (N.D. Ohio 1995). A court may grant a motion to amend or alter judgment if there is a clear error of law, newly discovered evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice. *See* Gencorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999) ("It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" McConocha v. Blue Cross & Blue Shield Mut. of Ohio, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting In re August, 1993 Regular Grand Jury, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994))). Because the Supreme Court of the United States has provided guidance not available prior to the Court's earlier rulings, the Court reconsiders its prior rulings in response to *Tackett*.

(5:11CV01676)

Reconsideration is just that. It is not an automatic reversal or vacatur of prior rulings.[2] As explained below, the Court maintains its bench trial rulings as to Subclasses A, C, and D and reverses its bench trial ruling as to Subclass B.

## II.

This writing incorporates the factual and procedural background of the case provided in the Court's Memorandum of Opinion and Order resolving the parties' cross-motions for summary judgment. *See* ECF No. 191; *Zino v. Whirlpool*, No. 5:11CV01676, 2013 WL 4544518 (N.D. Ohio August 27, 2013). Separately, in the Order issued after Phase One of trial, the Court concluded:

> 1. The members of Subclass C were promised lifetime, company-paid health benefits under the 1992-1995, 1995-2000, and 2000-2003 [Collective Bargaining Agreements or] CBAs.
>
> 2. With respect to Subclass D: (1) the members of Groups 1 and 2 were promised lifetime, company-paid health benefits under the same rules that applied to the members of Subclass C; (2) as to some members of Group 3 and all members of Group 4–they were not promised lifetime health benefits but they are entitled to company-paid health benefits up to the age of 65 in accordance with the terms established in Exhibit 5; (3) with respect to the members of Group 3 who are not entitled to company-paid health benefits–they are nevertheless entitled to participate in "retiree healthcare" until the age

---

[2] *See also* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). While this opinion appropriately revisits rulings made on summary judgment, the focus is ultimately on those rulings made following the Phase One bench trial.

3

(5:11CV01676)

>of 65 but they are responsible for paying the full cost of the premiums; and (4) the members of Groups 5 and 6, to the extent there are any, are neither entitled to lifetime retiree health benefits nor are they guaranteed "access" to them beyond the expiration of the 2003-2007 CBA.
>
>3. The ambiguity within Item 6(c) regarding the duration for which the Company agreed to fund retiree health benefits, and the conflict between Item 6(c) and the 1977 Welfare Plan, are resolved by the evidence presented at trial proving that the Company and the Union intended for the members of Subclass A to receive retiree health benefits for life.
>
>4. The applicable Sub-Agreement Provisions carried the 1980 Contract Settlement through to the 1983-1986, 1986-1988, and 1988-1992 CBAs, entitling the members of Subclass B to retiree health benefits for life.  In addition, Retirees' motion for reconsideration and/or relief from entry of summary judgment as to Subclass B is granted.

ECF No. 310 at PageID#: 10213-10214.

A unanimous Court held that *Tackett* was decided in contravention with ordinary principles of contract law. *See Tackett*, 135 S. Ct. 926.  The high Court "struck down the Sixth Circuit's 'Yard-Man inference' and the attendant contract interpretation principles adopted by *Yard-Man* and its progeny," creating an intervening change in controlling law.  ECF No. 332 at PageID#: 10326 (internal citations omitted).  The Supreme Court determined that the Sixth Circuit had incorrectly employed principles in tension with ordinary principles of contract law when evaluating CBAs. *Tackett*, 135 S. Ct. at 937.  It ordered courts to use ordinary principles of contract law and first look to the language of CBAs to ascertain the intention of the parties, with no *"thumb on the scale"* in favor of vesting. *Id.* at 935.  The Supreme Court also rejected the idea that a general durational clause in a CBA "says nothing about the vesting of retiree benefits." *Id.* at 934.  Courts, therefore, must now consider general durational clauses when construing CBAs. *Id.* at 936.  The Supreme Court also stated that "[c]ontractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement" and "courts should

(5:11CV01676)

not construe ambiguous writings to create lifetime promises." *Id.* at 930, 937.  Additionally, the Supreme Court rejected the Sixth Circuit's inference that the tying of retiree health benefits to the receipt of a pension meant that parties intended the health benefits to last as long as the pension benefits, *i.e.*, for life.  *Id.* at 937.  The Supreme Court concluded that such "inferences [are] inconsistent with ordinary principles of contract law." *Id.*

In the concurring opinion, Justice Ginsburg clarified by stating:

> Today's decision rightly holds that courts must apply ordinary contract principles, shorn of presumptions, to determine whether retiree health-care benefits survive the expiration of a collective-bargaining agreement.  Under the "cardinal principle" of contract interpretation, "the intention of the parties, to be gathered from the whole instrument, must prevail." [Citations omitted.] To determine what the contracting parties intended, a court must examine the entire agreement in light of relevant industry-specific customs, practices, usages, and terminology. [Citations omitted.] When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further. [Citations omitted.] But when the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties. [Citations omitted.]
>
> Contrary to M&G's assertion, [] no rule requires "clear and express" language in order to show that parties intended healthcare benefits to vest. "[C]ontraints upon the employer after the expiration date of a collective-bargaining agreement," we have observed, may be derived from the agreement's "explicit terms," but they may arise as well from . . . implied terms of the expired agreement."

*Id*. at 937-38.  See *American Tel. and Tel. Co. v. Communication Workers of America, AFL-CIO*, 985 F.2d 855, 859 (6th Cir. 1993) ("Although Justice Brennan's concurrence in Yellow Transit is not binding precedent, under the circumstances it is very persuasive."); *Sutton v. Cleveland Bd. of*

(5:11CV01676)

*Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992) ("Here, as in Baesler, we find persuasive Justice Powell's concurrence in Regents of University of Michigan v. Ewing . . . .").

### III.

Given the *Tackett* decision, the Court abandons employment of the *Yard-Man* presumption, related contract interpretation principles, and progeny, including any carried forward effect, to the extent it relied on such directly or otherwise in reaching its or summary judgment ruling, ECF No. 191, or bench trial rulings, ECF No. 310.  The Court reconsiders its prior rulings, as necessary, relying on ordinary principles of contract law to ascertain the meaning of the CBAs at issue. [3]

### IV.

In support of their motion for reconsideration, Defendants argue that any intent to vest retiree health benefits must be stated in "clear and express" language.  Defendants mistakenly contend that the Supreme Court in *Tackett* endorsed this standard because the majority opinion cites to *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998), a case that stands for the proposition that in order for healthcare benefits to vest for life under noncollectively bargained contracts, vesting must be stated in clear and express language.  See *Tackett*, 135 S.Ct. at 937.  Despite Defendants' proffers of case law from other jurisdictions issued before and after the *Tackett* decision in which courts have employed the "clear and express" standard, the

---

[3] It should be noted that on May 6, 2014, after the Court had issued its summary judgment ruling but prior to the bench trial, the Court asked the parties why it should not stay the matter since the Supreme Court decided to hear the *Tackett* appeal.  ECF No. 301.  Parties recommended that the Court not stay the matter.  ECF Nos. 304, 305.

(5:11CV01676)

Supreme Court simply did not adopt this standard for CBAs.  The Supreme Court cited to *Sprague,* which did not involve collectively bargained agreements, merely to demonstrate the inconsistencies within Sixth Circuit jurisprudence regarding the interpretation of bargaining agreements.  Almost as if to prevent the error made by Defendants, the concurring opinion clearly articulates that "no rule requires 'clear and express' language in order to show that parties intended healthcare benefits to vest." *Tackett*, 135 S.Ct. at 938 (Ginsburg, J., concurring).  Both the *Tackett* majority and concurring opinions cite to an earlier Supreme Court decision in which the Supreme Court stated "'[c]onstraints upon the employer after the expiration date of a collective-bargaining agreement,' we have observed, may be derived from the agreement's 'explicit terms,' but they 'may arise as well from ... implied terms of the expired agreement.'" *Id.* (citing *Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 203, 207 (1991)).  Accordingly, despite Defendants' urging and reliance on case law from other circuits, the Court will not adopt the clear and express language standard.

In a notice of supplemental authority (ECF No. 347), Defendants argue that a recent Sixth Circuit opinion, *Board of Trustees v. Moore*, 2015 WL 5010985 (6th Cir. Aug. 25, 2015), a case involving neither a CBA nor claims asserted under the Labor Relations Management Act, should move the Court to revisit its determination that the Group Insurance Plans ("GIPs") and the Summary Plan Descriptions ("SPDs") are not contractually binding provisions.  In *Board of Trustees*, the Sixth Circuit affirmed the district court's ruling that the Plaintiff's SPD was the controlling welfare benefits plan, because Plaintiff, the Board of Trustees for a multi-employer industry board, had failed to draft an actual welfare plan as authorized by Plaintiff's Trust

7

(5:11CV01676)

Agreement. *Id.* at *1. No other document set forth details regarding employee benefits. *Id.* at *4-5. In the absence of a separate plan document and in light of the testimony of the plan's director, the SPD constituted a Welfare Plan under ERISA. *Id.* at *4-5.

In the matter before the Court, however, there were actual, collectively-bargained welfare plans that governed the healthcare benefits of retirees. As the Court determined, the welfare plans did not incorporate the SPDs or GIPs:

> Whirlpool asserts that if the GIPs are not incorporated into the CBAs, Retirees have no viable vesting claims because "[t]he GIPs (and SPDs when issued) are the only documents containing a written description of the specific" healthcare benefits . . . This claim is inaccurate. Retirement healthcare benefits are described in § 2.06 of the Welfare Plans under the heading 'Medical Insurance.' . . . Though the GIPs describe the health insurance benefits with greater detail than do the Welfare Plans, which provide a general description of what retirees may receive, they need not be incorporated into the CBAs in order for Retirees' to have valid contractual claims.

ECF No. 191 at PageID#: 6324, n. 15. In its bench trial order, the Court reviewed the GIPs and SPDs. The Court ultimately determined that the reservations of rights language contained in the GIPs and SDPs did not contradict the conclusion that retirees were promised lifetime health benefits. *See* ECF No. 310 at PageID#: 10192-10193. The Court finds the matter at issue distinguishable from the *Board of Trustees*.[4]

**V.**

---

[4]As indicated earlier, several notices of supplemental authority and responses have been filed. The Court will not discuss each because they are not dispositive and are occluded by *Tackett*.

8

(5:11CV01676)

Upon reconsideration, in light of *Tackett*, and with due consideration to the general durational limits in the CBAs, for the following reasons, the Court maintains the results of its bench trial decision with respect to Subclasses A, C, and D, but reverses its bench trial decision with respect to Subclass B.  Below, the Court examines both its summary judgment and bench trial decisions.

**A.	Subclass A: 1980-1983 Retirees**

Subclass A is comprised of persons who retired between April 18, 1980 and April 19, 1983 are covered by the 1980-1983 CBA.  The Court denied Defendants summary judgment for Subclass A and ruled in favor of Plaintiffs for that class in its bench trial order.  The Court relied upon techniques now disavowed in its summary judgment ruling and carried that analysis forward (for Subclass A) in its bench trial ruling.  Here, the Court eschews that which is no longer permitted and still finds in favor of Plaintiffs for Subclass A.

Defendants' argument against vesting for this group relies heavily on the absence of contractual language that affirmatively declares the Subclass A retirees have a vested right to healthcare benefits, and the existence of a general duration clause.  Defendants are incorrect in understanding *Tackett* to require a CBA to contain clear and express language for a determination that healthcare benefits vested for life.  And, as Plaintiffs retort, "[t]he so-called 'General Duration' clause here does not unambiguously negate all other contractual indicia of ambiguity."  ECF No. 339 at PageID#: 10424.

At issue for Subclass A is language in Item 6(c) of the 1980 Contract Settlement that amended the 1977-1980 CBA.  That language states "[t]he Hoover Company assumes

9

(5:11CV01676)

responsibility for paying premiums to the insurance carrier for future retiree's medical insurance in accordance with the terms and conditions of the Plan." ECF No. 108-12 at PageID#: 1601.

The Court no longer relies on Item 6(c)'s *silence* on duration as evidencing an intent to vest. *See* ECF No. 310 at PageID#:10203. Nevertheless, ambiguity still exists. Ambiguity surrounds the term "future retiree's medical insurance" in Item 6(c) and prevents discernment of what "Plan" the 1980-1983 CBA was referencing. Defendants' post-expiration practices fuel that ambiguity.[5] That ambiguity prevented summary adjudication with respect to Subclass A, even in light of *Tackett*. As earlier indicated, Defendant also hinges its hopes for prevailing on the Contract Settlement's durational clause which is no model of clarity, lending itself to varying articulations as indicated by Plaintiffs. *See* ECF No. 339 at PageID#: 10425-10426.

Following the bench trial, the Court relied largely on the credible testimony of Schiltz to determine that Item 6(c) of the 1980 Contract Settlement granted the 1980-1983 retirees a lifetime entitlement to company-paid health benefits. ECF No. 310 at PageID#: 10202. The Court further stated that "while the application of the *Yard-Man* inference further bolsters the Court's finding by acting like 'a thumb on the scales' in favor of vesting . . . that inference supports but is not necessary to the finding made by the Court." ECF No. 310 at PageID#: 10204. The Court also eschwed the tying inference. *Id.* Overall, evidence presented at trial

---

[5] "The 1980-1983 Retirees' continued receipt of company-paid health benefits beyond the expiration of the 1980-1983 CBA is evidence of their lifetime right to receive such benefits. *See Weimer*, 773 F.2d at 676 n. 6." ECF No. 191 at PageID#: 6299. In *Weimer*, the Sixth Circuit noted that continued retiree benefits after the expiration of a CBA could be evidence of the parties' intent. *Weimer v. Kurz-Kasch*, 773 F.2d 669, 675 (6th Cir. 1985).

(5:11CV01676)

resolved the conflict between Item 6(c) and the 1977 Welfare Plan such that Plaintiffs proved that Defendants intended Subclass A to receive retiree health benefits for life. *See also* ECF No. 310 at PageID#: 10203-10205.

For the reasons given, the Court maintains its ruling in favor of Plaintiffs as to Subclass A, albeit for slightly different reasoning than articulated in its bench trial ruling.

**B.    Subclass B: 1983-1992 Retirees**

The Court granted summary judgment to Defendants regarding Subclass B, finding that retirees who retired after April 18, 1983, but before January 1, 1993, were not promised company-paid health benefits under any of the applicable Welfare Plans. ECF No. 191 at PageID#: 6302. Healthcare benefits terminated upon retirement, unless retirees elected to continue benefits at "their own expense." ECF No. 156 at PageID#: 4896; ECF No. 123-2 at PageID#: 2752, 2759, 2803.

After the bench trial, Plaintiffs filed a motion for reconsideration and/or relief from the Court's entry of summary judgment with respect to Subclass B. *See* ECF No. 261. In its bench trial decision, the Court granted Plaintiffs' Motion for Reconsideration based on the testimony of Schiltz and the testimony of former union representatives. ECF No. 310 at PageID#: 10208-10209. The Court determined that the 1980 Contract Settlement was a Sub-Agreement that was carried forward to the 1983-1986, 1986-1988, and 1988-1992 contract cycles. "Gensley, Repace, and Schiltz all considered the 1980 Contract Settlement to be a Sub-Agreement. Their testimonies are strong extrinsic evidence of the parties' understanding of the term." ECF No. 310 at PageID#: 10211. Unlike with Subclass A, however, the Court did not find ambiguity on

(5:11CV01676)

the face of any of the Welfare Plans in Subclass B that would permit the use of extrinsic evidence.  See *UAW v. BVR Liquidating, Inc.*, 190 F.3d 768, 774 (6th Cir. 1999), *cert. denied*, 529 U.S. 1067, 120 S. Ct. 1674, 146 L. Ed. 2d 483 (2000) (stating that if there is ambiguity in a provision of a CBA, a court may resort to extrinsic evidence to ascertain whether the parties intended for the benefits to survive the agreement); *see also Tackett*, 135 S. Ct. at 938 (Ginsburg, J, concurring) ("If, after considering all relevant contractual language in light of industry practices, the Court of Appeals concludes that the contract is ambiguous, it may turn to extrinsic evidence–for example, the parties' bargaining history.").  In the shadow of *Tackett,* and given the lack of ambiguity on the face of the relevant Welfare Plans, the Court's bench trial ruling in favor of Plaintiffs becomes untenable.

The Court therefore returns to its initial finding and grants summary judgment to Defendants with respect to Subclass B.

**C.     Subclass C: 1993-2003 retirees**

Health benefits for Retirees who retired after December 31, 1992, but before December 8, 2003, are governed by the 1992-1995, 1995-2000, and 2000-2003 CBAs.  These CBAs, unlike their predecessors, formally established that such retirees "shall have the *opportunity* to continue elements of the medical insurance . . . ."  ECF No. 123-2 at PageID#: 2804, 2815, 2824, 2832-2833 (emphasis added).  In its summary judgment ruling, the Court examined these CBAs under *Yard-Man* principles (ECF No. 191 at PageID#: 6306-6309), now disavowed by *Tackett.*  And, finding the use of "opportunity" ambiguous, the Court also examined its definition.  ECF No. 191 at PageID#: 6311-6312.  Having found that sufficient ambiguity existed, *i.e.*, that there were

(5:11CV01676)

differing reasonable interpretations of whether healthcare benefits vested for life, a position the Court maintains even in light of the general durational clauses, the Court applied the basic contract rule that "'[w]here a contractual provision is subject to two reasonable interpretations . . . that provision is deemed ambiguous and the court may look to extrinsic evidence–additional evidence that reflects the intent of the contracting parties–to help construe it.'" *Id.* (quoting *In re AmTrust Financial Corp.*, 694 F.3d 741, 750 (6th Cir. 2012)). Furthermore, as the Court stated in its summary judgment ruling:

> Section 3.01(c)(iii)(F) of the 2000-2003 Welfare Plan gave Retirees the option of enrolling in an Alternative Medical Plan instead of receiving coverage through the Basic and Major Medical Plan or the Comprehensive Plan. ECF No. 108-8 at 30. Alternative Medical Coverage provides coverage through Health Maintenance Organizations ("HMOs") and Preferred Provider Organizations ("PPOs"). ECF No. 108-8 at 22. The 2000-2003 Welfare Plan explicitly states that "the Company may cease offering the Alternative Medical Coverage on the annual re-enrollment date." ECF No. 108-8 at 22. In contrast, there is no language in the 1992-1995, 1995-2000, and 2000-2003 CBAs stating that the Basic and Major Medical and Comprehensive coverages for Retirees may be terminated by the Company."

ECF No. 191 at PageID#: 6305. The ambiguity surrounding the word "opportunity" and the alternative language in the 2000-2003 Welfare Plan provided sufficient ambiguity for the Court to turn to extrinsic evidence and preclude summary adjudication with respect to Subclass C. That ambiguity continues to be sufficient reason to preclude summary adjudication, even after the Court gives due weight to the general durational clause of each CBA.

In its bench trial order based largely on the credible testimony of Schiltz, the author of § 3.01 (c)(iii) in the 1992-1995, 1995-2000, and 2000-2003 Welfare Plan, and the credible testimony of Union representatives, the Court determined that the members of Subclass C were promised lifetime, company-paid health benefits under the 1992-1995, 1995-2000, and 2000-

(5:11CV01676)

2003 CBAs.  The Court explicitly stated "[a]lthough application of the *Yard-Man* inference further strengthens this conclusion, that inference is not needed for the Court to arrive at its conclusion."   ECF No. 310 at PageID#: 10190.

The Court maintains its ruling in favor of Plaintiffs, resulting from Phase One of the bench trial as it applies to Subclass C.

**D.    Subclass D**: **2003-2007 Retirees**[6]

In 2003, the Union and Defendants negotiated a new Welfare Plan with different language controlling the distribution of retiree health benefits.  Section 3.01(c)(iv) of the 2003-2008 Welfare Plan provides: "With regard to qualifying employees who retire subsequent to December 9, 2003, the available medical benefits shall be those summarized in Exhibit 5."  ECF No. 108-9 at PageID#: 1552.  In its summary judgment ruling, the Court stated:

> Exhibit 5 is written using informal shorthand expressions, rendering it difficult if not impossible for the Court to properly evaluate the language and terms in the absence of a more complete record.  For example, it is unclear what "access" to "retiree healthcare" means.  Should the Court interpret the language with reference to the preceding Welfare Plans, or is the Court to give fresh review of the terms of Exhibit 5?  The parties do not inform the Court one way or another.
>
> The Court has not been given an opportunity to engage in a proper evaluation of the issues as they pertain to this subclass.  Although different rules ostensibly apply to different groups within the subclass, the parties do not provide the Court with any means to make the appropriate distinctions or to assess the less-than-lucid terms.  The claims of the 2003-2007 Retirees will not, therefore, be resolved through summary adjudication.

ECF No. 191 at PageID#: 6319.  In its bench trial order, the Court relied on the testimony of Jim Repace, the President and Chief Spokesman of the Union from 1993 to 2008, and Schiltz to

---

[6] Subclass D includes Groups 1-6.  Each is addressed herein.

14

(5:11CV01676)

clarify the ambiguity surrounding Exhibit 5. ECF No. 310 at PageID#: 10197. From their testimony, the Court determined that "the 2003-2007 Retirees belonging to Groups 1 and 2 were promised lifetime, company-paid health benefits under the 2003-2008 Welfare Plan, in accordance with the rules applicable to the members of Subclass C." ECF No. 310 at PageID#: 10198. The Court did not rely on *Yard-Man* in drawing this conclusion. It therefore stands.

As Plaintiffs conceded, members of Group 3 and 4 were not promised retiree health benefits for life. ECF No. 310 at PageID#: 10199. The Court recognized that "the members belonging to Groups 3 and 4 received substantially less favorable benefits" compared to Groups 1 and 2, but cited the now disavowed tying inference as the basis for its determination that "the members of Groups 3 and 4 who are entitled to company paid health benefits are entitled to receive those benefits beyond the expiration of the 2003-2007 CBA up to the age of 65 under the terms of Exhibit 5." ECF No. 310 at PageID#: 10199. *Tackett* rejected the tying principle, which the Sixth Circuit had used to infer that the tying of retiree health benefits to the receipt of a pension meant that the parties intended the healthcare benefits to last for life, similar to pensions. *Tackett*, 135 S.Ct. at 937. Therefore, the Court may no longer ground its conclusion in the tying inference.

In its bench trial order, however, the Court also cited to Repace's testimony, which resolves the ambiguity surrounding Exhibit 5 as it pertains to Groups 3 and 4. *See* ECF No. 310 at PageID#: 10198-10199. In reconsidering its prior ruling, the Court now revises its reasoning and relies on the credible testimony of Repace to make its determination as to Groups 3 and 4. As the Court stated in its bench trial order, Repace testified that members of Group 3 were "not

15

(5:11CV01676)

entitled to post-65 healthcare, just pre-65," and that members of Group 4 "were entitled to the Comprehensive Plan up to the age of 65 . . . ." ECF No. 310 at PageID#: 10198-10199.  This testimony supports the Court's conclusions that (1) "the members of Groups 3 and 4 who are entitled to company-paid health benefits are entitled to receive those benefits . . . up to the age of 65 under the terms of Exhibit 5," and (2) "members of Group 3 who are not entitled to company-paid health benefits are nevertheless entitled to participate in "retiree healthcare" . . . until the age of 65, but they are required to pay the full cost of premiums." ECF No. 310 at PageID#: 10200. Accordingly, that portion of the Court's ruling with respect to Groups 3 and 4 stands.

In its bench trial order, the Court determined that "the members of Groups 5 and 6, to the extent there exist any, are neither entitled to lifetime retiree health benefits nor are they guaranteed 'access' to those benefits beyond the expiration of the 2003-2007 CBA." ECF No. 310 at PageID#: 10200.  That portion of the Court's ruling with respect to Groups 5 and 6 also stands.

In summary, regarding Subclass D, members of Groups 1 and 2 of Subclass D are entitled to lifetime health benefits; members of Groups 3 and 4 are entitled to benefits up to age 65; and members of Groups 5 and 6 are not entitled to health benefits beyond the expiration of the 2003-2007 CBA.

## IV.

In conclusion, the Court grants Defendants' Motion to Reconsider in part, and denies the motion in part.  Upon reconsideration, the Court maintains its rulings as to Subclasses A, C, and

16

(5:11CV01676)

D for the reasons stated herein.  The Court reverses its bench trial ruling as to Subclass B.  Specifically, the Court:

    (1) maintains its ruling in favor of Plaintiffs as to Subclass A, albeit for slightly different reasoning than articulated in its bench trial ruling;

    (2) returns to its initial finding and grants summary judgment to Defendants with respect to Subclass B;

    (3) maintains its ruling in favor of Plaintiffs, resulting from Phase One of the bench trial, as it applies to Subclass C; and

    (4) maintains its ruling in favor of Plaintiffs, resulting from Phase One of the bench trial, as it applies to Subclass D, in part, for different reasoning than articulated in its bench trial ruling.

    IT IS SO ORDERED.

 October 30, 2015                                     /s/ Benita Y. Pearson
Date                                                   Benita Y. Pearson
                                                         United States District Judge