PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ZINO, JR., *et al.*, | ) | |
| | ) | CASE NO. 5:11CV01676 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WHIRLPOOL CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 362 and |
| | ) | 364] |

Pending before the Court is Plaintiffs' Motion for Reconsideration And/Or Relief From

the Court's Entry of Judgment For Whirlpool On the Claims Of Subclass B (ECF No. 362), and

Defendants' Motion to Amend And Certify Issues for Interlocutory Appeal (ECF No. 364).  In

the Court's Memorandum of Opinion and Order issued on  October 30, 2015  (ECF No. 360)

resolving Defendants' Motion To Reconsider (ECF No. 332), the Court (1) maintained its ruling

in favor of Plaintiffs as to Subclass A; (2) returned to its initial finding and granted summary

judgment as to Defendants with respect to Subclass B; (3) maintained its ruling in favor

Plaintiffs, resulting from Phase One of the bench trial, as it applies to Subclass C; and (4)

maintained its ruling in favor of Plaintiffs, resulting from Phase One of the bench trial, as it

applies to Subclass D.  Plaintiffs' motion for reconsideration is opposed by Defendants and fully

briefed.  *See* ECF No. 367, ECF No. 370, and ECF No. 372.  Defendants' motion to certify issues

1

(5:11CV1676)

for interlocutory appeal is opposed by Plaintiffs, in part, and fully briefed.  *See* ECF No. 365,

ECF No. 369, and ECF No. 371.  The Court is fully informed having reviewed the record, that

submitted by the parties and the applicable law.

For the reasons set forth below, Plaintiffs' motion for reconsideration is granted and

Defendants' motion to certify for interlocutory appeal is denied.

### I. Plaintiffs' Motion for Reconsideration

The Federal Rules of Civil Procedure do not provide for motions for reconsideration.

The Sixth Circuit, however, has held that a motion to reconsider may be treated as a motion to

alter or amend a judgment under *Fed. R. Civ. P. 59(e)*.  *See Rodriguez v. City of Cleveland*, No.

*1:08-CV-1892, 2009 WL 1565956, at * 1 (N.D. Ohio June 6, 2009)* (citing *Smith v. Hudson*, 600

*F.2d 60, 62 (6th Cir.1979)*).  Nonetheless, such motions are disfavored and seldom granted

because they contradict notions of finality and repose.  *Id.*; *see also Wells Fargo Bank v. Daniels,*

*No. 1:05-CV-2573, 2007 WL 3104760, at * 1 (N.D. Ohio Oct. 22, 2007)*; *Plaskon Elec.*

*Materials, Inc. v. Allied-Sigal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).  A court may grant

a motion to amend or alter judgment if there is a clear error of law, newly discovered evidence

exists, an intervening change in controlling law occurs, or to prevent manifest injustice.  *See*

*Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  "It is not the

function of a motion to reconsider either to renew arguments already considered and rejected by a

court or 'to proffer a new legal theory or new evidence to support a prior argument when the

legal theory or argument could, with due diligence, have been discovered and offered during the

initial consideration of the issue.'"  *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930

(5:11CV1676)

F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994)).

Plaintiffs argue that the Court committed clear error of law in its adjudication of Subclass B's claims in the October 30, 2015 Order. *See* ECF No. 367 at Page ID #10802. As explained below, the Court grants Plaintiffs' motion and, after reconsideration, returns to its post-trial ruling in favor Plaintiffs as it applies to Subclass B. All other rulings in favor of Plaintiffs remain unchanged.

### A. Factual and Procedural Background

This writing incorporates the factual and procedural background of the case provided in the Court's Memorandum of Opinion and Order resolving the parties' cross-motions for summary judgment. *See* ECF No. 191; *Zino v. Whirlpool*, No. 5:11CV01676, 2013 WL 4544518 (N.D. Ohio August 27, 2013).

Plaintiffs seek reconsideration of the following ruling as to Subclass B, as set out in the Court's October 30, 2015 Order:

> Unlike with Subclass A, however, the Court did not find ambiguity on the face of any of the Welfare Plans in Subclass B that would permit the use of extrinsic evidence. *See UAW v. BVR Liquidating, Inc.*, 190 F.3d 768, 774 (6th Cir. 1999), cert. denied, 529 U.S. 1067, 120 S. Ct. 1674, 146 L. Ed. 2d 483 (2000) (stating that if there is ambiguity in a provision of a CBA, a court may resort to extrinsic evidence to ascertain whether the parties intended for the benefits to survive the agreement); *see also Tackett*, 135 S. Ct. at 938 (Ginsburg, J, concurring) ("If, after considering all relevant contractual language in light of industry practices, the Court of Appeals concludes that the contract is ambiguous, it may turn to extrinsic evidence–for example, the parties' bargaining history."). In the shadow of *Tackett*, and given the lack of ambiguity on the face of the relevant Welfare Plans, the Court's bench trial ruling in favor of Plaintiffs becomes untenable.

(5:11CV1676)

> The Court therefore returns to its initial finding and grants summary judgment to Defendants with respect to Subclass B.

ECF No. 360 at PageID#: 10747-48.

Plaintiffs argue that (1) the Court committed clear error of law by failing to consider whether the Sub-Agreement and Previous Collective Agreement provisions of the collective bargaining agreements ("CBAs") establish a contractual ambiguity; and (2) traditional principles of contract interpretation and labor agreement law allow the introduction of extrinsic evidence to construe the agreements, even if there is no ambiguity on the face of the agreements. ECF No. 372 at PageID#: 10845-46, 10851. The Court acknowledges that it must examine the entire agreement in determining the parties' intent as to whether retiree health benefits are to vest. ECF No. 367 at PageID#: 10803; *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 937-38 (2015). On this basis, Plaintiffs' motion for reconsideration is granted. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

**B. Sub-Agreement and Previous Collective Agreement Provisions**

The "entire" Subclass B CBA includes the Sub-Agreement clauses of the relevant basic labor agreements ("BLAs") and the Previous Collective Agreement clauses of the 1983 and 1986 Contract Settlements. The Sub-Agreement provision of the relevant BLAs reads as follows:

> Any Sub-Agreements which may be, or have been, executed between the parties will be continued to the extent they are not altered, either in their own provisions, or by the provisions of this Agreement, or by mutual agreement.

(5:11CV1676)

ECF No. 367 at PageID#: 10797.  According to Plaintiffs, by the terms of this Sub-Agreement

provision, the 1980 Contract Settlement is "carried over" into the Subclass B Welfare Plans as a

sub-agreement, permitting the Court to examine extrinsic evidence to interpret the ambiguity in

the 1980 Contract Settlement.  ECF No. 367 at Page ID # 10803-04.

The "Previous Collective Agreement" provision of the 1983 and 1986 Contract

Settlements reads as follows:

> The parties herein agree that the term of the collective agreement shall include the
> terms of the previous collective agreement plus any and all amendments, deletions
> and additions.

ECF No. 367 at PageID#: 10797.  Plaintiffs argue this Previous Collective Agreement provision

provides an alternative basis for finding that the 1980 Contract Settlement was carried forward

into the Subclass B CBAs.  ECF No. 367 at PageID#: 10804-05.

The words of these provisions are clear but their effect not so.  For instance, it is unclear

whether the parties intended for the Subclass B Welfare Plans to "alter" the 1980 Contract

Settlement as a sub-agreement, in accordance with the limitation of the Sub-Agreement

provision.[1]  Equally unclear is whether the parties considered the 1980 Contract Settlement to be

---

[1]In *Tackett*, the Supreme Court clarified that courts must apply ordinary principles
of contract interpretation when construing CBAs.  *See* 135 S.Ct. at 926, 928.  In
accordance with these principles, when interpreting a CBA a court must give words in the
agreement their plain and ordinary meaning.  *See Eastin v. Reliance Standard Life Ins.
Co.*, 2014 WL 3397141 at *3 (6th Cir. 2014) (citation omitted) (citing with approval that
"ERISA plans are interpreted consistent with contract principles and words are given
their plain and ordinary meaning.").

The Sub-Agreement provision, by its own terms, excludes incorporation of sub-
agreements to the extent that they are "altered" by the terms of the CBA.  The plain and

(continued...)

(5:11CV1676)

a previous collective agreement, such that the limitation of the Sub-Agreement provision would

not apply to it, and it would be incorporated into the Subclass B CBAs through the Previous

Collective Agreement Provision.  These are two examples in which the confusion resulting from

these agreements becomes most evident.

Plaintiffs argue that the Court's last and unfavorable ruling in favor of Defendants as to

Subclass B is "unique" and

> raises the question as to why, in the face of this evidence, the parties would have
> agreed to such an obligation for one contract term (1980-83) , renounce that
> agreement for the next three, and then reinstate the agreement for those retiring in
> 1993 and thereafter.  *See Kellogg*, 457 F.2d 519 ("Collective bargaining
> agreements like other contracts are to be given a reasonable construction, not one
> which results in injustice and absurdity.").

ECF No. 367 at PageID #10807.  This question is the best advocacy on behalf of Plaintiffs,

offered in the fifteen-page memorandum in support of reconsideration.  When viewed in context,

a finding that the parties intended to single out Subclass B for an entirely different obligation

---

[1](...continued)
ordinary meaning of the word "alter" is "to change" or "to modify."  *See Alter*, Black's
Law Dictionary (6th ed. 1990); Merriam–Webster Online Dictionary,
http://www.merriam-webster.com/dictionary/alter (last visited Dec. 23, 2015).  When this
definition is appropriately read into the Sub-Agreement provision, it appears that the Sub-
Agreement provision excludes sub-agreements that are changed or modified in their own
provisions, by the provisions of the CBA, or by mutual agreement.

On this reading, it seems the Subclass B CBAs' provision for termination of
health benefits at retirement, may have altered (or changed) the 1980 Contract
Settlement's provision for vested benefits.  Yet, as the Court previously found, "[t]hat
Welfare Plan language cannot be said to have 'alter[ed]' the 1980 Contract Settlement
because the same conflict existed when the 1980 Contract Settlement was originally
executed.").  *See*  ECF No. 310 at PageID#: 10209.  The Sub-Agreement provision,
therefore, on its own creates sufficient ambiguity allowing the Court to examine extrinsic
evidence in interpreting the Subclass B agreements.

(5:11CV1676)

than that for the subclasses that came before and after it would constitute an unreasonable

construction of the CBAs.  This is especially so because the intent for such disparate treatment of

Subclass B is discordant with an examination of the entire agreement and the course of conduct

of the parties.  *See* 11 Williston on Contracts § 32:7 (4th ed.) ("Ordinarily, the circumstances

surrounding the execution of a contract may always be shown and are relevant to a determination

of what the parties intended by the words they chose. . . . Thus, although the parties may not,

because of the parol evidence rule, testify as to agreements they made before or

contemporaneously with the execution of the contract, the circumstances surrounding the

execution of the contract bear on the contract's meaning."); *Id.* at § 32:11 ("The words of a

contract should be given a reasonable meaning rather than an unreasonable one and a court will

endeavor to give a construction most equitable to the parties and which will not give one of them

an unfair or unreasonable advantage over the other.").

So, perhaps the Court did err.  It erred in attempting to read reason into the unreasonable.

The lack of care given the documentation of matters as important as retiree health and welfare

benefits is shameful.  Because there is a scintilla of ambiguity, an aura of unreasonableness and a

disgusting lack of scribner's care, the Court, after a review of the entire agreement, reverses its

ruling on Subclass B and finds there is sufficient ambiguity justifying a review of extrinsic

evidence and course of dealing.  That extrinsic evidence shows that Subclass B, like the other

subclasses, is vested for lifetime benefits.  *See* ECF No. 310 at PageID #10207-13.

The Court, therefore, finds that retiree health benefits for Subclass B are vested.  On the

issue of reconsideration, the Court need not address Plaintiffs' remaining argument.

(5:11CV1676)

## II. Defendants' Motion to Certify for Interlocutory Appeal

Defendants seek certification for interlocutory appeal of certain issues stemming from the Court's October 30, 2015 Memorandum of Opinion and Order (ECF No. 360), pursuant to 28 U.S.C. § 1292(b). ECF No. 365. Under § 1292(b), a district judge may certify an order for interlocutory appeal if (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; *and* (3) an immediate appeal may materially advance the ultimate conclusion of the litigation. The Court finds that this matter is not appropriate for certification under § 1292(b).

### A. Requirements of 28 U.S.C. § 1292(b) Not Satisfied

The wording of 28 U.S.C. § 1292(b) makes clear that the Court may certify an order for interlocutory appeal only if all three elements of the statute are satisfied. As to the third element–whether an immediate appeal may materially advance the ultimate termination of the litigation–Defendants offer no more than speculation, and therefore fail to satisfy the statutory requirements. ECF No. 369 at PageID#: 10816-17; *see e.g.*, *Sigma Financial Corp. v. American Intern. Speciality Lines Ins. Co.*, 200 F.Supp.2d 710, 724 (E.D. Mich. 2002) (citation omitted) ("Although determination whether immediate appeal would materially advance the ultimate termination of the litigation necessarily involves predictions concerning the litigation's outcome, the 'movant must advance something more than mere conjecture that certification would substantially reduce time and expense.'").

Defendants argue that "if the Sixth Circuit were to rule in favor of Whirlpool on the proposed certified issues, there would be no need to proceed with Phases Two and Three of

(5:11CV1676)

Trial." ECF No. 371 at PageID#: 10836. That a favorable circuit decision would obviate the

need for additional phases of trial is not enough to satisfy the criteria of § 1292(b). If it were,

most parties disappointed by a trial court's ruling would easily satisfy that element of § 1292(b).

Such a result is at odds with the Sixth Circuit's policy that the § 1292(b) certification should be

granted sparingly. *See In re Endo Pharmaceuticals Holdings, Inc., et al.*, No. 15-0503, slip

opinion (6th Cir. Nov. 17, 2015) ("[R]eview under § 1292(b) should be the exception, granted

only in an extraordinary case . . . [, even when] there may be grounds for difference of opinion as

to the district court's holdings[.] [W]e are not persuaded that an immediate appeal is likely to

materially advance the ultimate termination of these cases.").

As Plaintiffs argue, even if the Court certifies the Order for interlocutory appeal, the Sixth

Circuit may exercise its discretion not to hear the appeal, and even if the Sixth Circuit does hear

the appeal, it would take time for the Court to render its judgment. ECF No. 369 at PageID#:

10818; *See e.g. Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974)

("The granting of an interlocutory appeal in the present case would not 'materially advance the

ultimate termination of the litigation.' Many months would be required before the case would be

reached for argument on the congested docket of this court. If we grant the appeal and then

should affirm the order of the district court . . . the case then would be remanded to the district

court for trial on its merits. On the other hand, it would appear that only a few days would be

required for a jury trial and final disposition of the case in the district court. This procedure,

which would avoid a piecemeal appeal, is preferable except in the extraordinary type of case

(5:11CV1676)

contemplated by § 1292(b).").  This matter can be resolved fairly expediently by way of a

consolidated bench trial.

Because Defendants have offered no more than mere conjecture about how an

interlocutory appeal in this case may materially advance the ultimate termination of the litigation,

they cannot satisfy the prerequisites for § 1292(b) certification.

### B. § 1292(b) Certification is A Matter Within the Court's Discretion

The Court also notes that the decision whether to grant certification for interlocutory

appeal pursuant to § 1292(b) is a matter within the district court's discretion.  *See Swint v.*

*Chambers County Com'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district

courts first line discretion to allow interlocutory appeals."); *Gillespie v. United States Steel*

*Corp.*, 379 U.S. 148, 168, n.4 (1964) ("The purpose of s 1292(b) was to permit a district judge,

in his discretion, to obtain immediate review of an order which might control the further conduct

of the case and which normally involves an unsettled question of law.").  In fact, a district court

judge may decline to grant certification even where it appears all three factors of § 1292(b) are

met.  *National Asbestos Workers Medical v. Philip Morris*, 71 F.Supp.2d 139, 162 (E.D.N.Y.

1999).

The interests of justice heavily weigh against certification.  This is a time-sensitive matter

for aging class members, many of whom are octogenarians or older.  *See* ECF No. 369 at Page ID

#10815.  These parties may be deprived of repose in this matter if final adjudication is further

delayed.   Concerns of judicial economy also weigh against certification, as an interlocutory

appeal would result in piecemeal litigation, potentially wasting the Court's and parties' time and

(5:11CV1676)

resources.[2]  This is likely why the Second Circuit, for example, "has repeatedly cautioned that the 'use of this [§ 1292(b)] certification procedure should be strictly limited because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of final judgment.'"  *Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F.Supp.2d 369, 372 (S.D.N.Y. 2008) (citations omitted).

As Defendants correctly point out, this case "has already been on this Court's docket for four plus years."  ECF No. 365 at PageID#: 10789.  That said, Defendants have not satisfied the Court that there is good reason for further delay of finality and repose in this matter.

For the foregoing reasons, Defendants' Motion to Amend And Certify Issues for Interlocutory Appeal (ECF No. 364) is hereby denied.  The matter shall proceed to a consolidated trial on all remaining triable issues.

## **Conclusion**

Plaintiffs' motion for reconsideration is granted: Subclass B, like the others, is vested. Defendants' motion for certification is denied.

---

[2]  Defendants state in support of their motion that "[m]oving forward with trial on the reasonable modification questions without guidance from the Sixth Circuit could result in an outcome that is inconsistent with a later Sixth Circuit determination, thus causing further delay and unnecessary use of the parties' and the courts' resources."  ECF No. 365 at PageID#: 10782.  The Court is not persuaded by this argument which, interestingly contradicts that Defendants made when, prior to the bench trial, Defendants (and Plaintiffs) asked the Court not to stay the matter, even though the Supreme Court had decided to hear the *Tackett* appeal.  *See* ECF Nos. 301 and 302.

(5:11CV1676)

The matter is set for consolidated bench trial February 22, 2016.  The matter is set for a

telephonic final pretrial conference on January 15, 2016 at 1:00 p.m.  Plaintiffs' counsel is to

arrange the conference call.


IT IS SO ORDERED.


 December 31, 2015                            /s/ Benita Y. Pearson
Date                                         Benita Y. Pearson
                                             United States District Judge

C:\Users\romitos\AppData\Local\Temp\notes2EAA2D\Zino 11-1676 [B IS VESTED final].wpd

12