PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ZINO JR., *et al.*, | ) |
| | ) CASE NO. 5:11CV1676 |
| Plaintiffs, | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| WHIRLPOOL CORPORATION, *et al.*, | ) **MEMORANDUM OF OPINION AND** |
| | ) **ORDER** [Resolving ECF Nos. 436, 441, |
| Defendants. | ) 451] |

Pending before the Court are Defendants' Motion for Reconsideration (ECF No. 436) and Plaintiffs' Motion for Leave to File a Surreply (ECF No. 451). The Motion for Reconsideration is opposed by Plaintiffs and fully briefed. ECF Nos. 449, 450. Also pending is Defendants' Motion to Strike the Declaration of Pamina Ewing, Accompanying Exhibits, and Portions of Plaintiffs' Corresponding Post Trial Briefing. ECF No. 441. Plaintiffs responded (ECF No. 447) and Defendants replied (ECF No. 448).

The Court is fully informed having reviewed the record and that submitted by the parties, including supplemental legal authority. For the following reasons, Plaintiffs' Motion for Leave to File a Surreply is granted. Defendants' Motion for Reconsideration and Motion to Strike are denied.

**I. Motion for Reconsideration (ECF No. 436) and Motion for Leave to File Surreply (ECF No. 451)**

Defendants move the Court to reconsider its rulings that Defendants had agreed to provide Plaintiffs with vested healthcare benefits, arguing that the contracts are unambiguous,

(5:11CV1676)

and, in the alternative, that recently discovered extrinsic evidence demonstrates Defendants' lack of intent to vest.  ECF No. 436; *see also* ECF Nos. 310, 360, 373.  The Motion for Reconsideration is opposed by Plaintiffs and fully briefed.  ECF Nos. 449, 450.  For good cause shown, Plaintiffs' Motion for Leave to File Surreply (ECF Nos. 451) is granted.  For the following reasons, Defendants' Motion for Reconsideration is denied.

**A. Background**

The Court summarized the factual and procedural background of this case in its summary judgment ruling.  ECF No. 191; *Zino v. Whirlpool*, No. 5:11CV01676, 2013 WL 4544518 (N.D. Ohio Aug. 27, 2013).  During Phase One of the trial, the Court addressed one narrow question: have Plaintiffs proven by a preponderance of the evidence that the governing collective bargaining agreements ("CBAs") entitle them to receive retiree health benefits for life?  ECF No. 226 at PageID #: 7728.  Based on the evidence adduced at trial, Plaintiffs moved for reconsideration of the portion of the Court's Memorandum of Opinion and Order entering summary judgment in favor of Defendants as to the members of Subclass B.  ECF No. 261.  In a Memorandum of Opinion and Order resolving Plaintiffs' motion and Phase One of the trial, the Court concluded:

> 1. The members of Subclass C were promised lifetime, company-paid health benefits under the 1992–1995, 1995–2000, and 2000–2003 CBAs.
>
> 2. With respect to Subclass D: (1) the members of Groups 1 and 2 were promised lifetime, company-paid health benefits under the same rules that applied to the members of Subclass C; (2) as to some members of Group 3 and all members of Group 4—they were not promised lifetime health benefits but they are entitled to company-paid health benefits up to the age of 65 in accordance with the terms established in Exhibit 5; (3) with respect to the members of Group 3 who are not

2

(5:11CV1676)

> entitled to company-paid health benefits—they are nevertheless entitled to participate in "retiree healthcare" until the age of 65 but they are responsible for paying the full cost of the premiums; and (4) the members of Groups 5 and 6, to the extent there are any, are neither entitled to lifetime retiree health benefits nor are they guaranteed "access" to them beyond the expiration of the 2003-2007 CBA.
>
> 3. The ambiguity within Item 6(c) regarding the duration for which the Company agreed to fund retiree health benefits, and the conflict between Item 6(c) and the 1977 Welfare Plan, are resolved by the evidence presented at trial proving that the Company and the Union intended for the members of Subclass A to receive retiree health benefits for life.
>
> 4. The applicable Sub-Agreement Provisions carried the 1980 Contract Settlement through to the 1983–1986, 1986–1988, and 1988–1992 CBAs, entitling the members of Subclass B to retiree health benefits for life. In addition, Retirees' motion for reconsideration and/or relief from entry of summary judgment as to Subclass B is granted.

ECF No. 310 at PageID #: 10213–14.

After the Court's ruling, a unanimous Supreme Court held that *Tackett v. M&G Polymers USA, LLC*, 733 F.3d 589 (6th Cir. 2013) was decided in contravention with ordinary principles of contract law. *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 931 (2015). This decision, which struck down the Sixth Circuit's "*Yard-Man* inference," created an intervening change in controlling law, and Defendants moved for reconsideration. ECF No. 332. The Court reconsidered its prior rulings, relying on ordinary principles of contract law, as instructed by *Tackett*. ECF No. 360. Ultimately, the Court maintained its rulings as to Subclasses A, C, and D, but reversed its bench trial ruling as to Subclass B. *Id.* at PageID #: 10752–53.

Plaintiffs then moved the Court to reconsider the Court's Entry of Judgment for Defendants on the claims of Subclass B, arguing that the Court committed clear error of law in its adjudication of Subclass B's claims. ECF No. 362 (motion); ECF No. 367 (memorandum in

3

(5:11CV1676)

support). The Court granted the Motion and, after further reconsideration, returned to its original post-trial ruling in favor of Plaintiffs as it applies to Subclass B. ECF No. 373. Ultimately, the Court found the benefits for Subclass B to be vested lifetime benefits.

Defendants now move the Court to reconsider its prior rulings that Defendants had agreed to provide Plaintiffs in Subclasses A, B, C, and Groups 1 and 2 of Subclass D with vested healthcare benefits for life, and had agreed to provide Plaintiffs in Groups 3 and 4 of Subclass D with vested healthcare benefits until the age of 65. ECF No. 436 (motion); ECF No. 437 (memorandum in support). Defendants argue that the Sixth Circuit Court of Appeal's recent ruling in *Gallo v. Moen Inc.*, 813 F.3d 265 (6th Cir. 2016) contravenes the Court's reasoning.

**B. Standard of Review**

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. The Sixth Circuit, however, has held that a motion to reconsider may be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *See Rodriguez v. City of Cleveland*, No. 1:08CV1892, 2009 WL 1565956, at *1 (N.D. Ohio June 6, 2009) (citing *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979)). Rule 59(e) motions, "though frequently brought, are granted only in rare and unusual circumstances." *Rainworks Ltd. v. Mill-Rose Co.*, 1:06CV1549, 2009 WL 2382974, at *1 (N.D. Ohio July 30, 2009) (quoting *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). The motions "run contrary to notions of finality and repose" and are therefore discouraged. *Id.* (quoting *McConocha v. Blue Cross and Blue Shield Mutual of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (internal citations and quotations omitted)). Accordingly, a district court "has considerable discretion in deciding whether to grant [a Rule

(5:11CV1676)

59(e)] motion." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010); *see also Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982) ("The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court.").

A district court may grant a motion to alter or amend judgment only if there was (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice. *Am. Civil Liberties Union v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). To constitute "newly discovered evidence," the evidence must have been previously unavailable. *See GenCorp*, 178 F.3d at 834. A Rule 59(e) motion is not intended to be utilized to relitigate issues previously considered. *Equal Emp't Opportunity Comm'n v. Argent Indus., Inc.*, 746 F. Supp. 705, 706 (S.D. Ohio 1989). Neither should it be used as a vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before. *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) ("It is well established . . . that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment.").

**C. Discussion**

Defendants move the Court to reconsider its prior rulings in light of the Sixth Circuit's recent decision in *Gallo v. Moen Inc.*, 813 F.3d 265 (6th Cir. 2016). ECF No. 436. Defendants argue that under *Gallo*, the plain language of the parties' contracts unambiguously precludes vested retiree benefits, and the Court erred by using extrinsic evidence to evaluate the contracts. ECF No. 437 at PageID #: 13326. Alternatively, Defendants contend that even if the extrinsic

(5:11CV1676)

evidence were proper, evidence from the second phase of trial, and additional evidence not presented at trial demonstrate that the Court's rulings were in error. *Id*. Because Defendants have not demonstrated a "clear error in law," or other basis for reconsideration, the Court denies the Motion to Reconsider.

### i. Ambiguity

Foremost, Defendants argue that *Gallo* instructs that there was no ambiguity in the agreements in this case. ECF No. 437 at PageID #: 13331–39. In support, Defendants urge the plain language of the contracts; general durational clause; reservation of rights clause; and contrasting pension plan language. *Id*.

### a. Contractual Language

Defendants contend that the parties' contractual provisions regarding retiree healthcare benefits are unambiguous and do not convey an intent to vest retiree healthcare benefits. ECF No. 437 at PageID#: 13326–34. Defendant highlight the Sixth Circuit's determination in *Gallo* that "nothing in [the agreements] says that Moen committed to provide unalterable healthcare benefits to retirees and their spouses for life." *Gallo*, 813 F.3d at 270. Defendants also emphasize the court's rejection of the retirees' argument that the use of the future tense (*e.g.* that benefits "will be provided" or that future retirees "will be covered") created ambiguity. *Id.* at 269–71. Defendants argue that the language used in this case is no more binding than that used in *Gallo*, and, accordingly, *Gallo* mandates that the Court find no ambiguity. ECF No. 437 at PageID #: 13332.

6

(5:11CV1676)

Defendants misunderstand the effect of *Gallo*. As a preliminary matter, the Court notes that the Sixth Circuit limited its decision, emphasizing that it was based on the CBAs in *Gallo*. *Gallo*, 813 F.3d at 274 ("As applied to *this set of contracts* . . . . (emphasis in the original)). To say that *Gallo* created a bright-line rule requiring that a contract expressly include vesting language is an overly broad reading of the case. In fact, the Sixth Circuit cautioned that its decision did not create a clear-statement rule, and that courts should continue to apply "ordinary principles of contract law" as instructed by *Tackett*. *Id.* at 274 (citing *Tackett*, 135 S. Ct. at 933).

Moreover, Defendants' approach—comparing individual phrases of each contract with language in the *Gallo* contracts—fails to take into account the context of the language within the agreements. *See Transp. Commc'n Emps. Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 161 (1966) ("In order to interpret [a collective bargaining agreement] it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements."); *see also* 11 Williston on Contract § 32:5 (4th ed.) (ordinary principles of contract law require a contract be read as a whole). Although Defendants are correct that the use of the future tense, on its own, is insufficient to create ambiguity, when viewed in the context of the contracts as a whole, the agreements in this case went beyond those in *Gallo* and the Sixth Circuit's recent decision, *Cole v. Meritor*, 855 F.3d 695 (6th Cir. 2017).[1]

---

[1] After Defendants moved to reconsider, the Sixth Circuit decided *Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. Apr. 20, 2017). The appellate court noted that the case was "materially indistinguishable" from *Gallo*, and, accordingly, reached the same conclusion that the retirees' benefits were not vested. The *Cole* court noted that language indicating that benefits "shall be continued" was insufficient to vest the benefits. *Id.* at

(continued...)

(5:11CV1676)

In reviewing the contracts in this case, the Court, applying traditional principles of contract interpretation in light of the Supreme Court's decision in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2016), addressed the threshold inquiry: whether the language of the CBAs was ambiguous as to the duration of retirees' healthcare benefits. See *Tackett*, 135 S. Ct. at 935, 937; *see also Tackett v. M & G Polymers USA, LLC*, 811 F.3d 204, 208–10 (6th Cir. 2016) ("*Tackett III*") (reviewing the subject agreements using "ordinary principles of contract law."). In addition to the vague phrasing, the Court properly found instances of ambiguity throughout the contracts. ECF No. 360 at PageID #: 10746–47.

The Court's finding of ambiguity is confirmed by other decisions recently made by the Sixth Circuit. See *Reese v. CNH Industrial N.V.*, 854 F.3d 877 (6th Cir. Apr. 20, 2017) ("*Reese III*"); *UAW v. Kelsey-Hayes Co.*, 854 F.3d 862 (6th Cir. Apr. 20, 2017). In neither of these cases did the contracts at issue use the sort of clear-statement vesting language for which Defendants advocate. Regardless of that, the Sixth Circuit found ambiguity as to the duration of healthcare benefits in both cases. *Kelsey-Hayes*, 854 F.3d at 867 (quoting *Tackett III*, 811 F.3d at 209) ("[W]e also cannot presume that the absence of such specific language, by itself, evidences an intent *not* to vest benefits[.]"); *Reese III*, 854 F.3d at 881 (noting that the *Tackett III* court "declined to adopt an 'explicit language' requirement in favor of companies." (quoting *Tackett III*, 811 F.3d at 209)). The *Kelsey-Hayes* court relied on the fact that the parties' contracts barred

---

[1](...continued)
700. The *Cole* court also determined that the CBAs' general durational clauses governed, despite retirees' evidence that the CBAs set specific durational limits on layoff and leave, and that the CBAs set cost caps for retiree healthcare benefits. *Id*.

8

(5:11CV1676)

unilateral modification; that the contracts used different durational language for different benefits; and other latent ambiguities in the agreements, as the parties had incorporated the same language relating to healthcare benefits as they had in prior agreements. *Kelsey-Hayes*, 854 F.3d at 868–69.  In *Reese III*, the court found ambiguity "partially from the silence as to the parties' intention." *Reese III*, 854 F.3d at 883.  The court also relied on the benefits' "segregation from other entitlements in the CBA," and the tying of healthcare benefits to vested pension benefits. *Id*.

For similar reasons, ambiguity exists in the case at bar.  Like the CBAs in *Kelsey-Hayes*, the basic labor agreements ("BLAs") in this case required mutual consent to alter the agreements. ECF No. 191 at PageID #: 6326.  Accordingly, as in *Kelsey-Hayes*, "[b]ecause the contract here barred unilateral modification, the applicability of the general-durational clause to the duration of healthcare benefits raises some ambiguities." *Kelsey-Hayes*, 854 F.3d at 868.  *Reese III* further bolsters the Court's conclusion, as it also relied on the tying of healthcare and pension benefits. As in *Reese*, the Welfare Plans in this case segregated benefits, noting that retiree benefits "shall have the opportunity to continue," *e.g.*, Joint Exhibit 30 at § 3.01(c)(iii) (1992 Welfare Plan), but setting concrete durational limits for other benefits. *E.g.*, *id.* (setting specific durational limits for the following: health insurance after a layoff (one month); health insurance for dependents in the event of an employee's disability (three months for the Basic Medical Expense Plan, prescription, vision and dental plans; twelve months for Major Medical Benefits); health insurance for dependents in the event of an employee's death (cutoffs dependent upon amount of pension credit earned); life insurance after a layoff or other terminated employment (three

9

(5:11CV1676)

months and one month, respectively); accidental death and dismemberment insurance in the event of an employee's absence due to illness or injury (six months); and health insurance in the event of an employee's absence due to illness or injury (six months if the illness or injury is non-occupational; eighteen months if the disability occurred for occupational illness or injury)). Furthermore, the Court originally found that it could not "ground its conclusion in the tying inference." ECF No. 360 at PageID #: 10751. *Reese III* clarifies that although the tying of retiree health benefits to the receipt of a pension does not vest benefits, it can create ambiguity. *Reese III*, 854 F.3d at 882–83.

For these reasons, in addition to the ambiguities the Court identified in its prior ruling, the Court finds no basis to alter (*i.e.* reconsider) its ruling that there was sufficient ambiguity in the contract language to permit the use of extrinsic evidence in the Court's analysis.

### b. Durational Clause

Defendants contend that the Court improperly "brushed aside a general duration clause," arguing that under *Gallo*, the presence of a general durational clause, without specific retiree healthcare duration language, terminates any obligation to provide benefits. ECF No. 437 at PageID #: 13335 (citing *Gallo*, 813 F. 3d at 267); *see also* ECF No. 450 at PageID #: 13796–98.

The blanket rule Defendants advocate is neither dictated by *Gallo* nor consistent with the Supreme Court's decision in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2016) or Sixth Circuit precedent. As evidenced by the Sixth Circuit's recent decisions, the presence of a general durational clause is not dispositive. In *Reese III*, the court found that "[s]ilence as to the duration of retiree healthcare benefits, when combined with those benefits' coupling to pensioner

10

(5:11CV1676)

status and their segregation from other entitlements in the CBA, overcomes any presumption that the general-durational clause should govern." *Reese III*, 854 F.3d at 883 (citing *Tackett III*, 811 F.3d at 208). Similarly, despite the presence of a general durational clause, the *Kelsey-Hayes* court determined that the contract was ambiguous. *Kelsey-Hayes*, 854 F.3d at 868–69. As discussed above, even despite the presence of a general durational clause, there are various ambiguities in the contracts. Accordingly, the Court declines to revisit its ruling on this basis.

### c. Reservation of Rights

Defendants contend that, under *Gallo*, the "Administration and General Provisions" portion of each Exhibit A-1 contains a reservation of rights clause. ECF No. 437 at PageID #: 13336. The Exhibit A-1s state:

> The administration of the amended Welfare Plan and of the insurance provisions thereof, including, but not limited to, the selection and replacement of insurance carriers, the purchase, renewal, cancellation and substitution of the appropriate contracts of insurance, the collection and payment of premiums and the performance of all necessary accounting, shall be solely by the Company. The Company shall retain dividends and refunds, if any, from said policies of insurance.

*e.g.*, Joint Exhibit 10 at 10. The *Gallo* court found that a clause giving the company "the right to amend, cancel, or reinsure the policies or change the underwriters thereof, so long as [specified] benefits are maintained for the life of this Agreement" was a reservation of rights clause. *Gallo*, 813 F.3d at 270 (alterations in original). Defendants argue that the Exhibit A-1 provisions are equivalent to *Gallo*'s reservation of rights clause. ECF No. 437 at PageID #: 13336.

Unlike in *Gallo*, the Exhibit A-1s were governed by BLAs, which state: "Changes in, or amendments to, the terms of this Agreement may be made at any time by mutual consent of the

11

(5:11CV1676)

Company and the Union. When amendment or revisions are made, they shall be reduced to writing and be executed in the same manner as this Agreement." *E.g.*, Joint Exhibit 12 at 57 (1980 BLA). As has been determined by this Court, "the BLAs clearly recognize that Welfare Plans are part of the 'Agreement' referenced in the mutual consent provision." ECF No. 191 at PageID #: 6326. No such mutual consent provision was present in *Gallo*, and the Court finds this case distinguishable from *Gallo*'s reservation of rights clause.

Defendants also argue that these agreements incorporate the reservations of rights from Group Insurance Plans and Summary Plan Descriptions issued between 1980 and 2009. ECF No. 437 at PageID #: 13336 (citing *Gallo*, 813 F.3d at 269–70). The Court has determined that these clauses, found in unilaterally published benefits summaries, were not incorporated into the CBAs. ECF No. 191 at PageID #: 6323 (citing *Moore v. Menasha Corp.*, 690 F.3d 444, 455–56 (6th Cir. 2012) and *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 264 (6th Cir. 2012)); ECF No. 310 at PageID #: 10190–91; ECF No. 360 at PageID #: 10744. Defendants, citing testimony from the first phase of trial and case law already considered by the Court, offer no reason for the Court to reconsider its rulings. *See, e.g.*, ECF No. 437 at PageID #: 13338 (citing ECF No. 360 at PageID #: 10743–44 (discussing *Bd. of Trs. v. Moore*, 800 F.3d 214 (6th Cir. 2015)) in support); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.").

For these reasons, the Court declines to reconsider its prior rulings that the agreements do not contain a reservation of rights clause.

12

(5:11CV1676)

### d. Pension Plan Language

Defendants contrast the Exhibit A-1s and Exhibit A-2s, arguing that, under *Gallo*, the use of the word "vested" in the pension plans, but its absence in the welfare plans, "demands a difference in meaning." ECF No. 437 at PageID #: 13338–39 (citing *Gallo*, 813 F.3d at 270). The rule is not so clear cut. As Plaintiffs correctly note, 29 U.S.C. § 1053(a) requires employers to state explicitly in pension plans that such benefits are vested, but there is no such law for welfare benefits. ECF No. 449 at PageID #: 13771 n. 3. Therefore, the Court cannot assume intent behind the obligatory inclusion of the word "vested" in the pension plans or its absence in the welfare plans.

Nor does Sixth Circuit precedent require this conclusion. The *Gallo* court specifically pointed to the language in the CBAs specifying that "when [certain] benefits are no longer payable . . . the normal monthly survivor pension benefit will be paid for the rest of the survivor's life." *Gallo*, 813 F.3d at 270. So, it was not just the use of the word vested, but the clear intent that the pension benefits would continue on beyond the life of other benefits that guided the court in *Gallo*. Such distinction is lacking from the contracts at issue. Although Defendants cite numerous instances where the Exhibit A-2s use the word "vested" or refer to the "lifetime" of the pensioner, the agreements lack the express intent that the pension benefits continue *beyond the life of other* benefits. In fact, the original provision granting continued benefits to future retirees was included under the Pension section, suggesting that the parties considered this benefit to be guaranteed for life. *See* Joint Exhibit 14 at 1–3.

13

(5:11CV1676)

Furthermore, the agreements at issue in both *Kelsey-Hayes* and *Reese III* featured vested pension benefits or provisions explicitly guaranteeing pension benefits for life, but were ambiguous on the longevity for healthcare benefits. *Kelsey-Hayes*, 854 F.3d at 868; *Reese III*, 854 F.3d at 882–83. These cases demonstrate that the express vesting of pension benefits, but not of healthcare benefits, is not dispositive.

For these reasons, the Court finds that the express vesting of pension benefits is not a sufficient basis upon which to reconsider its decision.

### e. Summary

For the foregoing reasons, the Court declines to alter or "reconsider" its rulings, and maintains that there is sufficient ambiguity to consider the extrinsic evidence.

### ii. Extrinsic Evidence

In the alternative, Defendants argue that extrinsic evidence weighs against vesting. ECF No. 437 at PageID #: 13339–43. Defendants argue that *Gallo* "makes clear that the extrinsic evidence that this Court relied on carries no weight in a vesting determination." ECF No. 450 at PageID #: 13798. Defendants take issue with the Court's reliance on the fact that the Company continued to cover retiree healthcare benefits after expiration of the 1980 Contract Settlement and 2003 Exhibit A-1. *Id.* at PageID #: 13799. *Gallo* did not bar all consideration of continued payment. Instead, the court noted that "a company does not act inconsistently when (1) it continues paying healthcare benefits to retirees *and* (2) reserves the right to alter or eliminate those benefits in the future." *Gallo*, 813 F.3d at 274 (emphasis added). As discussed above and

14

(5:11CV1676)

unlike in *Gallo*, there was no reservation of rights clause in this case. Accordingly, *Gallo* is inapplicable in this instance.

Defendants also argue that the Court improperly relied on Tim Schiltz's testimony, which he admitted was based on his understanding of *Yard-Man*-era law. ECF No. 450 at PageID #: 13799. But, to advance their position Defendants can point to only one, inconsequential reference Shiltz makes to since-overruled case law. *Id.* (citing ECF No. 255 at PageID #: 8918). Defendants' other arguments that Mr. Shiltz's testimony was "ambiguous," ECF No. 437 at PageID #: 13342, is equally insufficient to serve as a basis for reconsideration. *See Am. Civil Liberties Union v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)) (finding that a district court may grant a motion to alter or amend judgment only if there was (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice).

Defendants also argue that the facts have shifted, citing "new extrinsic evidence": depositions from Jim Gensley (Defendants' Exhibit 170) and Tim Schiltz (Defendants' Exhibit 177); testimony from the trial's second phase; and 1983 contract negotiation documents. *Id.* at PageID #: 13799–13802. This "newly discovered" evidence is not the type contemplated by Rule 59. "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Intern. Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999); *see also Leisure Caviar, LLC v. U.S. Fish and Wildlife Service*, 616 F.3d 612, 617 (6th Cir. 2010) (declining to find that information discovered during a deposition was "newly discovered"). Although these depositions and testimony from the second trial were not in evidence at the time

15

(5:11CV1676)

the Court rendered its initial decision, Defendants offer no explanation why they could not have presented this testimony at the first phase of trial. The argument for the 1983 contract negotiation documents is even more specious—these documents surely existed at the time of the Court's decision.

The Court finds the matter distinguishable from *Gallo*, and finds no other reason to alter its earlier decision.

### D. Conclusion

For these reasons, the Court denies Defendants' Motion for Reconsideration.

## II. Motion to Strike (ECF No. 441)

Defendants move to strike the Declaration of Pamina Ewing, submitted in support of Plaintiff's Final Proposed Findings of Facts and Conclusions of Law for Phase Two of Trial; the exhibits attached to Ms. Ewing's declaration; and the portions of Plaintiffs' Final Proposed Findings of Facts and Conclusions that are based on Ms. Ewing's declaration or the attached exhibits. Defendants contend that these exhibits were not previously produced during the litigation or introduced at trial. ECF No. 442 at PageID #: 13545–46. Defendants argue that the exhibits are procedurally improper, as Plaintiffs have not moved to reopen the record or obtained Defendants' consent to proffer this evidence. *Id.* at PageID #: 13546. Furthermore, Defendants argue that they will suffer undue prejudice if the Court accepts these exhibits into evidence. *Id.* at PageID #: 13548.

Plaintiffs counter that the information in Exhibits 2 through 10 of Pamina Ewing's Declaration are encompassed by the parties' pretrial stipulation that "Medicare.gov" is a joint

16

(5:11CV1676)

exhibit. ECF No. 447 at PageID #: 13727; *see also* ECF No. 408 at PageID #: 12317 (describing "JX 125" as "Medicare.gov Website"). Plaintiffs characterize these exhibits as "provid[ing] basic background information in a readily accessible format, information which was either testified to by Whirlpool trial witness David Osterndorf and/or constitutes official pronouncements of federal agencies pursuant to statutory or regulatory authorization." ECF No. 447 at PageID #: 13727. Exhibit 1 is a notice sent to class members by Express Scripts. *Id.* at PageID #: 13728. The document includes a summary of cost-sharing under the current prescription drug plan. *Id*. Plaintiffs offer this exhibit to clarify facts already admitted into evidence.

The Court denies the Motion to Strike. Regarding Exhibits 2 through 10, the parties' communications and the Court's trial ruling establish that Joint Exhibit 125 encompasses all Medicare.gov materials, "without limitation." ECF No. 395-8 at PageID #: 11576 (email from Attorney Celina Joachim to Plaintiffs' counsel); *see also* ECF No. 423 at PageID #: 12538–39. Moreover, any prejudice to Defendants is minimal. Defendants offer some of the same information in their own Proposed Post-Trial Findings of Fact. *See, e.g.*, ECF No. 439 at PageID #: 13515, ¶ 335 (noting that Medicare Part B has a $166 annual deductible, and citing Defendants' Exhibit 143). Additionally, Plaintiffs' Exhibits are largely corroborated by Mr. Osterndorf's trial testimony or governmental documents.

Exhibit 1 is a document that corroborates information already in the record in Defendants' Exhibit 37, and clarifies Defendants' otherwise misleading statement that drug co-payments only increased to $5, $10, and $15 (ECF No. 439 at PageID #: 13478–79, ¶ 186).

17

(5:11CV1676)

Unlike in *E.E.O.C. v. Monarch Mach. Tool Co.*, 737 F.2d 1444 (6th Cir. 1980), in which the district court requested evidence which, until that time, had not been introduced into the record, Exhibit 1 was put before Defendants, in the form of Defendants' own exhibit.  *See also Wright v. Southwest Bank*, 554 F.2d 661, 664 (5th Cir. 1977) (finding harmless error when post-trial records of employees' absences had previously been introduced into the record).

In the alternative, the Court takes judicial notice of these exhibits.  *See, e.g.*, ECF No. 423 at PageID #: 12538–39.  Under Rule 201, the court can take judicial notice of adjudicative facts, including "'[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."  Fed. R. Evid. 201; *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014); *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. Aug. 31, 2015) ("As to the seven documents retrieved from official government websites [including Medicare.gov,] it is clearly proper to take judicial notice.  Courts routinely take judicial notice of such governmental records."); *Tomaszycki v. Turkelson*, No. 15-CV-12298, 2015 WL 6605441, at *1 n.1 (E.D. Mich. Oct. 30, 2015) ("Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice."). Furthermore,  Rule 803 of the Federal Rules of Evidence provides that "public records" are not excluded by the rule against hearsay.  A document is a "public record" if it is a "a record or statement of a public office" and "it sets out . . . a matter observed while under a legal duty to report" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803.

18

(5:11CV1676)

For these reasons, Defendants' Motion to Strike is denied.

### III. Conclusion

For the foregoing reasons, Defendants' Motions to Reconsider and to Strike are denied. Plaintiffs' Motion for Leave is granted.

IT IS SO ORDERED.

 July 27, 2017                           */s/ Benita Y. Pearson*
Date                                             Benita Y. Pearson
                                                  United States District Judge